KAREN M. GOODMAN, SBN: 117423
SUMMER D. HARO, SBN: 245482
GOODMAN & ASSOCIATES
3840 Watt Avenue – Bldg. A
Sacramento, CA 95821-2640
Telephone No:  (916) 643-0600
Facsimile No:    (916) 643-0605
kgoodman@goodman-law.com
suharo@goodman-law.com

Attorney for Plaintiff Rakesh Joshi and Pranika Joshi

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAKESH JOSHI and PRANIKA JOSHI,<br><br>　　　　Plaintiffs,<br>　vs.<br>STARBUCKS CORPORATION, a Washington Corporation, and Does 1 through 10 inclusive,<br><br>　　　　Defendants. | Case No.: 2:09-CV-00095-FCD-DAD<br><br>**PLAINTIFFS RAKESH JOSHI AND PRANIKA JOSHI'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER OF RIGHT TO ATTACH AND WRIT OF ATTACHMENT**<br><br>**Date:**　　March 6, 2009<br>**Time:**　　10:00 a.m.<br>**Judge:**　　Hon. Frank C. Damrell, Jr.<br>**Location:**　501 I Street<br>　　　　　　Courtroom No. 2, 15th Floor<br>　　　　　　Sacramento, CA 95814 |

## I.　INTRODUCTION

　　Plaintiffs Rakesh and Pranika Joshi seek to have this court order that a writ of attachment in the amount of $1.5 million be placed on all of Defendant Starbucks Corporation's presently owned corporate property, which is subject to attachment under Code of Civil Procedure Section 487.010(a), including bank accounts, so as to ensure that Defendant will not continue to dissipate funds available to satisfy a probable judgment in favor of Plaintiffs. Plaintiffs require that this writ be granted by this Court

because of the true danger that Defendant will transfer and further dissipate assets to other parties in order to evade the probable judgment for breach of the lease.

## II. STATEMENT OF FACTS

Defendant is registered with the California Secretary of State as a Washington corporation. Plaintiffs own the real property located at 14 West Eaton Road, Chico, California, 95973 ("the Property"), which is at the corner of a major intersection in Chico, California. (R. Joshi Declaration; P. Joshi Declaration)  Plaintiffs have owned the subject property for several years.  In or about June 2007, Plaintiffs and Defendant entered into negotiations for Defendant to lease a portion of a retail business complex that would be constructed on the Property by Plaintiffs and consistent with Defendant's specifications. (R. Joshi Declaration)  Defendant was to open one of its coffee shops, using its internationally recognized name, trademark and business reputation, to be the anchor store in that complex, and required that Plaintiffs construct the business complex with a drive-through specifically designed for Defendant's store. (R. Joshi Declaration)

In or about February 2008, Plaintiffs and Defendant entered into a written lease agreement, pursuant to their negotiations (referred to as "the Lease"). (R. Joshi Declaration, **Exhibit A** attached)  In that agreement, Plaintiffs agreed to build the retail complex, with the anchor store portion, consisting of approximately 1,700 square feet, to be designed consistent with Defendant's specifications, subject to Defendant's approval, and with a drive-through area for Defendant's store, which was also to be designed consistent with Defendant's specifications. (R. Joshi Declaration, **Exhibit A** attached, ¶¶ 1, 4.1, 4.2, 4.6, 18.2)  The Lease provided that Defendant would lease the anchor store from Plaintiffs for an initial period of 10 years, beginning when Plaintiffs completed construction of the complex and delivered possession to Defendant. (R. Joshi Declaration, **Exhibit A** attached, ¶¶ 2.1, 2.2)  The Lease further provided that Defendant would pay Plaintiffs an annual Base Rent as follows: an annual rent of $76,500.00 for the first 5 years of the initial lease term and an annual rent of $84,252.00 for the last 5 years of the initial lease term, for a total of **$803,760.00**, in addition to its

proportional share of Common Area Maintenance charges in an amount to be determined. (R. Joshi Declaration, **Exhibit A** attached, ¶¶ 3, 11, 12.3)

The Lease further contained an "Exclusivity" Clause which prohibited Plaintiffs from leasing any other portion of the complex to any person or entity, other than a full-service, sit-down restaurant, who would sell coffee beans, coffee drinks, tea or tea-based drinks, or blended beverages. (R. Joshi Declaration, **Exhibit A** attached, ¶ 5.4) The Lease further provided that the Lease would be governed by the laws of the State of California, where the Property is located, and that in the event of a dispute between the parties regarding the Lease that the prevailing party would be entitled to reasonable attorneys' fees. (R. Joshi Declaration, **Exhibit A** attached, ¶¶ 23.12, 23.16)

In reliance on Defendant's agreement to open and operate one of its coffee shops on the Property, pursuant to the Lease terms, Plaintiffs acquired financing from Community First Bank, in the amount of approximately $1,500,000.00, for the construction of the business complex. (R. Joshi Declaration)  This financing resulted in a promissory note for approximately $1.5 million which encumbers the Property.  (R. Joshi Declaration)  Plaintiffs would not have sought such financing if Defendant had not agreed to the Lease, or if they knew that Defendant would not comply with its obligations under the Lease.  (R. Joshi Declaration)  Nor would Plaintiffs have constructed a retail building on the Property in 2008, if Defendant had not promised to perform under this  Lease, or if they knew that Defendant would not comply with its obligations under the Lease.  (R. Joshi Declaration)

Pursuant to the Lease, and relying on Defendant's promise to perform its obligations under the Lease, Plaintiffs incurred substantial expenses employing architects and designers to develop and secure the approval of plans for the retail business complex, which were based on Defendant's specifications, and began construction of the complex on the Property. (R. Joshi Declaration)  Defendant was responsible for preparing and submitting architectural plans to secure the proper building permits for the interior fixtures and design of the 1,700 square foot space it was

leasing on the Property. (R. Joshi Declaration)

From March 2008, through June 18, 2008, Defendant, through several of its representatives, advised Plaintiffs that it planned to honor the Lease, but that the approval of Defendant's building plans and permits had merely been delayed. (R. Joshi Declaration) On June 20, 2008, after Defendant's Director inspected the Property, Defendant, through Leslie Mitchell, the Northern California Senior Store Development Manager for Starbucks, told Plaintiffs for the first time that it had decided the site was very "green" for its current business plans, and that even though Defendant had a signed lease agreement with Plaintiffs that it "will not be moving forward with occupying the space and will not be submitting our building permit plans." (R. Joshi Declaration, **Exhibit B** attached) Plaintiffs completed the business complex, consistent with Defendant's specifications and offered to deliver possession of the anchor store location to Defendant, consistent with the Lease. (R. Joshi Declaration) On December 12, 2008, Defendant again admitted to Plaintiffs that its "decision not to open at this location and therefore not pay rent **constitutes a default** under the Lease." (R. Joshi Declaration, **Exhibit C** attached) (emphasis added) To date, in spite of this candid admission of liability, Defendant has refused to occupy the Property or pay Plaintiffs the full fair rental value required under the Lease. (R. Joshi Declaration)

Because of Starbuck's breach, other interested tenants reneged on their commitments to lease the building. Plaintiffs are now in an impossible situation: they owe $1.5 million on a construction loan expended for the express benefit of Starbucks, yet Starbucks has reneged on its promise. Plaintiffs are obligated to pay the monthly mortgage payments on their loan, but are not receiving any of the anticipated monthly lease income from Starbucks.

In addition to losing 10 years-worth of rental payments from Starbucks, which were due under the lease, Plaintiffs are personally liable for a $1.5 million promissory note which encumbers the Property. Because of Starbuck's breach, the anticipated income stream to be used to satisfy this obligation does not exist,  This "catch 22" is

even more problematic since Plaintiffs built the retail building to Starbuck's unique and precise specifications. The building is now empty because Starbucks refused to occupy it, or pay for that space, as required by the Lease. (R. Joshi Declaration) Plaintiffs have lost additional rental income because they were not able to lease any of the remaining retail space to any tenant who would sell coffee, tea or blended beverages, because the Lease prohibited Plaintiffs from looking for or accepting such tenants. (R. Joshi Declaration, **Exhibit A** attached, ¶ 5.4) If Plaintiffs had known that Defendant was not going to open its store on the Property, Plaintiffs would not have encumbered the Property, become liable for the construction loan or built the business complex in 2008. (R. Joshi Declaration)

Further, in reliance on the Lease and Defendant's representations that it would occupy the anchor store location in the business complex, Plaintiffs informed other potential tenants that Defendant would be the anchor-store for at least 10 years. (R. Joshi Declaration) Unfortunately, since Defendant repudiated its obligations under the Lease, and has refused to open its store on the Property, other tenants, and potential tenants, for the Property terminated their respective leases and lease negotiations with Plaintiffs. (R. Joshi Declaration) Consequently, because Defendant repudiated its Lease with Plaintiffs, Plaintiffs have lost the rental income that would have been generated by other tenants who have refused to lease the Property without Defendant occupying the anchor location. (R. Joshi Declaration)

It is apparent that Starbucks has made a business decision to systematically breach lease agreements such as this one and then delay resolution in an effort to mask its financial problems from its shareholders and from the public.

### III.   PROCEDURAL HISTORY

On January 12, 2009, Plaintiffs filed a Complaint against Defendants for breach of contract, breach of the covenant of good faith and fair dealing and for promissory fraud. (Haro Declaration) At the time the Complaint was filed, the amount Defendant owed to Plaintiff amounted to at least $1,5 million, based on Defendant's anticipatory

repudiation of its 10-year lease (lost rents of $803,760.00), in addition to a proportional share of Common Area Maintenance expenses, as required by the Lease, plus the reasonably estimated lost rental income from potential tenants who terminated leases and lease negotiations following Defendant's refusal to occupy the Property, the lost rental income from those potential tenants Plaintiff could not consider during the Spring of 2008, because those potential tenants wished to sell coffee, tea or blended beverages and Defendant's Lease prohibited such tenants, and the $1.5 million promissory note that now encumbers the Property.  (R. Joshi Declaration) Additionally, because Defendant has refused to perform its obligations under the Lease, or compensate Plaintiffs for its failure to do so, Plaintiffs have had to incur significant attorneys' fees to litigate this matter, and will continue incur such fees until this matter is resolved.  (R. Joshi Declaration)

     Defendant was served with the Complaint and Summons, on January 21, 2009. (Haro Declaration)  Defendant has not yet responded to Plaintiffs' Complaint; its response is due on February 10, 2009.  (Haro Declaration)

     It is apparent that Starbuck's disclosed financial condition has significantly worsened since Plaintiffs were first notified of the anticipatory repudiation of the lease. On January 28, 2009, Defendant filed its Form 8-K with the United States Securities and Exchange Commission ("SEC"), and issued a press release attached as Exhibit 99.1 to the Form 8-K.  (Request for Judicial Notice, **Exhibit 1**, attached)  In its Form 8-K, Defendant stated that it planned to close approximately 300 "Company-operated stores" in addition to the 600 U.S. store closures announced in July 2008.  (Request for Judicial Notice, **Exhibit 1**, attached)  Additionally, Defendant estimates the reduction of 6,000 of its employee positions, and the reduction of 700 "non-store partners" both in the U.S. and internationally.  (Request for Judicial Notice, **Exhibit 1**, attached)  Defendant also stated in its Form 8-K that it expects to incur "up to $140 million for lease termination costs and future lease obligations."  (Request for Judicial Notice, **Exhibit 1**, attached) Based on Defendant's recent SEC filings and press release, it is apparent that

Defendant is in a very precarious financial situation that jeopardizes Plaintiffs' ability to collect for losses from the admitted contract breach.

Plaintiffs seek this right to attach order and writ of attachment solely to secure recovery on Plaintiffs' claim against Defendant for breach of contract. (Haro Declaration, R. Joshi Declaration; P. Joshi Declaration) Plaintiffs do not seek attachment for any purpose other than the recovery of their claim against Defendant for breach of contract. (Haro Declaration, R. Joshi Declaration; P. Joshi Declaration) Further, Plaintiffs have no information or belief that their claim against Defendant for breach of contract has been discharged in a proceeding under Title 11 of the United States Code or that the prosecution of the action is stayed in a proceeding under Title 11 of the United States Code. (Haro Declaration, R. Joshi Declaration; P. Joshi Declaration) Plaintiffs are further informed and believe that they are entitled to attach all of Defendant's corporate property that is subject to attachment under California Code of Civil Procedure section 487.010(a). (Haro Declaration, R. Joshi Declaration; P. Joshi Declaration) Accordingly, Plaintiffs request that the Court issue a right to attach order and a writ of attachment in the amount of $1.5 million, for all the corporate property, including real property and bank accounts, owned by Defendant. (Haro Declaration, R. Joshi Declaration; P. Joshi Declaration)

## IV.   LEGAL AUTHORITY:

**A WRIT OF ATTACHMENT IS THE PROPER METHOD FOR SECURING ASSETS IN A DISPUTE ARISING OUT OF A CONTRACT CLAIM**

Federal Rule of Civil Procedure, Rule 64, provides that "at the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."   (Fed. R. Civ. Proc. 64(a))   Federal Rule of Civil Procedure, Rule 64(b) further provides that one of the remedies under this rule is the remedy of attachment. Hence, California law governs the writ of attachment proceeding.

Under California Code of Civil Procedure section 484.010[1], upon the filing of the complaint, or at any time thereafter, a plaintiff may apply for a right to attach order and a writ of attachment by filing an application for the order and writ in the court where the action is brought.  Code of Civil Procedure section 483.010 provides that  "an attachment may be issued only in an action on a claim or claims for money, each of which is based upon a contract."  Under Code of Civil Procedure section 487.010(a), any property owned by a defendant corporation is subject to attachment, so long as a method of levy for that property is provided by Code of Civil Procedure section 488.300, *et seq*.  Code of Civil Procedure section 488.315, provides the method and procedure for attaching real property.  Additionally, an application for a right to attach order and a writ of attachment may include an estimate of the costs and allowable attorney's fees. (Code Civ. Proc. §482.110)

To secure a right to attach order, and a writ of attachment pursuant to Code of Civil Procedure section 484.010, a plaintiff need only provide, (a) a statement showing that the attachment is sought to secure the recovery on a claim upon which an attachment may be issued; (b) a statement of the amount to be secured by the attachment; (c) a statement that the attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based; (d) a statement that on information and belief plaintiff's claims have not been discharged or stayed under a bankruptcy proceeding; and (e) a description of the property to be attached, which, for corporate defendants, is satisfied by a reference based on plaintiff's information and belief to "all corporate property which is subject to attachment pursuant to subdivision (a) of Code of Civil Procedure Section 487.010." (Code Civ. Proc. §484.020)  The court shall issue a writ of attachment upon a showing that plaintiff's claim is **probably valid** and the property is subject to an attachment proceeding.  (Code Civ. Proc. §484.050(b) and (d))  The basic purpose of the remedy of attachment is to aid in the collection of a money demand by seizing property in advance of trial and judgment, as security for

---

[1] All citations to the Code of Civil Procedure refer to the California Code of Civil Procedure.

eventual satisfaction of the judgment.  (*National Gen. Corp. v. Dutch Inns of America, Inc.* (1971) 15 Cal.App.3d 490, 495)

  Here, Plaintiffs meet all of the elements required for an application for the issuance of a right to attach order and a writ of attachment.

  Plaintiffs' claims against Defendant arise from Defendant's breach of the Lease by failing to occupy the portion of the Property (as specified in the Lease) for a minimum of 10 years, and failing to pay Plaintiffs for the rent and Common Area Maintenance payments required by the Lease.  A claim for breach of contract provides grounds for the issuance of a right to attach order and a writ of attachment.  Plaintiffs seek an attachment of Defendant's corporate property, in the amount of $1.5 million, to secure the recovery of Plaintiffs' claim for breach of contract, which is now well over $1.5 million, and will only increase with the anticipated costs and fees, because of Defendant's precarious financial situation.  Plaintiffs only seek the attachment of Defendant's corporate property to secure the recovery of Plaintiffs' claim, since Defendant's present financial condition, as shown in its Form 8-K filing with the SEC, makes Plaintiffs' recovery in the far future if this matter goes to trial uncertain.

  Plaintiffs have no information or belief that its claims have been discharged or stayed in a bankruptcy proceeding, and, since Defendant is a corporation, Plaintiffs seek to attach all of Defendant's corporate property which is subject to attachment. Moreover, Defendant (at least judging by the pre-suit admissions contained in numerous emails) does not seem to contest the validity of Plaintiffs' claim. Consequently, since Plaintiffs are likely to prevail on their claim for breach of contract, and Defendant's corporate property is subject to an attachment proceeding, Plaintiffs are entitled to a writ of attachment.  (Code Civ. Proc. §484.050(b) and (d))

  **A. Plaintiff's Are Likely To Prevail On Their Claim For Breach Of Contract**

  Not only is this a simple breach of contract claim – Defendant agreed to lease Plaintiffs' Property for 10 years and pay Plaintiff a corresponding rent of $803,760.00, plus a proportional share of Common Area Maintenance expenses, and Defendant

refused to perform any of its obligations under that agreement – apparently Defendant does not contest its liability to Plaintiffs.  (R. Joshi Declaration, **Exhibits B** and **C**, attached)  A claim for breach of contract exists where (1) there was a contract; (2) the plaintiff did all, or substantially all of the significant things the contract required it to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant failed to do something that the contract required it to do; and (5) that plaintiff was harmed by that failure.  (*Acoustics, Inc. v Trepte Construction Co.* (1971) 14 Cal.App.3d 887, 913)

Here, Defendant unjustifiably breached its contractual obligations to Plaintiffs. Plaintiffs and Defendant entered into the Lease in February 2008, whereby Plaintiffs agreed to build a retail business complex on their Property in accordance with Defendant's specifications and lease a portion of that complex to Defendant for at least 10 years and to refrain from leasing any other portion of the complex to a tenant who sold coffee, tea or blended beverages, and Defendant agreed to pay Plaintiffs rent in the amount of $803,760.00, plus a proportional share of Common Area Maintenance expenses.  Plaintiffs acquired a loan to build the retail complex, and built that complex in accordance with Defendant's specifications, which included a drive through designed for Defendant.  Plaintiffs also refrained from leasing any of the other space in the complex to any tenants who would sell coffee, tea or other beverages.  Further, Plaintiffs offered to deliver possession of the anchor store location to Defendant, consistent with the lease.  Plaintiffs therefore did all, or at least substantially all, of the significant things the Lease required them to do, which satisfied all of the conditions required for Defendant's performance.  However, Defendant failed to occupy the Property, and failed to pay Plaintiffs the rent and proportional share of Common Area Maintenance Expenses, as a required by the Lease.  Moreover, Defendant has conceded that it breached its obligations under the Lease. (R. Joshi Declaration, **Exhibits B** and **C**, attached)

As a direct consequence of Defendant's failures, Plaintiffs were harmed in that they became liable for a $1.5 million promissory note for the construction of the retail

complex, were saddled with a unique building custom designed and constructed for Defendant, lost the $803,760.00 in rent owing from Defendant and Defendant's proportional share of Common Area Maintenance expenses. Plaintiffs were further harmed by Defendant's breach in that they have not leased any portion of the complex to any tenant who would sell coffee, tea or blended beverages (as defendant had demanded), thus severely limiting their ability to fill the remaining retail spaces in the complex and receive rent from such tenants, and in that several tenants and potential tenants refused to move into the complex after Defendant repudiated the Lease. Further, Plaintiffs have incurred, and will continue to incur substantial attorneys' fees and costs in litigating this matter to remediate the damage caused by Defendant. Consequently, because Plaintiffs are likely to prevail on their claim for breach of contract, they are therefore entitled to a right to attach order, and a writ of attachment pursuant to Code of Civil Procedure sections 483.010(a) and 484.050(b), (d).

**B.     Amount of Attachment**

Plaintiffs ask the court to attach the amount of $1.5 million to ensure payment of the anticipated judgment, including pre-judgment interest plus reasonable attorneys' fees. It is anticipated that if this matter goes to trial that provable losses and attorneys fees as the prevailing party will be substantially higher. (Cal. Civ. Code § 3300). Accordingly, it is requested that Defendant's interest in its corporate property, which is subject to attachment, be attached in the sum of $1.5 million in order to protect plaintiffs' interest in light of the clear breach of contract.

**V.     CONCLUSION**

As shown by the foregoing, a right to attach order and a writ of attachment should issue since Plaintiffs have set forth all of the elements require for a right to attach order and a writ of attachment, and because it is apparent that Plaintiffs will probably prevail on their claim for breach of contract. A right to attach order and writ of attachment simply ensure that Plaintiffs' interests are secured for the eventual satisfaction of judgment in this case where Defendant is in financial distress and admits

to breaching the Lease. Plaintiffs respectfully request this writ of attachment be granted.

DATED:  January 30, 2009              **GOODMAN & ASSOCIATES**

              **By:** <u>//s//  Summer D. Haro (SBN: 245482)</u>
                 KAREN M. GOODMAN,
                 SUMMER D. HARO, Attorneys for
                 PLAINTIFFS RAKESH JOSHI and
                 PRANIKA JOSHI