```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF CALIFORNIA

                            ----oo0oo----
```

RAKESH JOSHI and PRANIKA JOSHI,

        NO. CIV. S-09-0095 FCD/DAD

    Plaintiffs,

  v.                      MEMORANDUM AND ORDER

STARBUCKS CORPORATION, a Washington corporation, and DOES 1 through 10, inclusive,

    Defendants.

```
                            ----oo0oo----
```

    On January 12, 2009, Rakesh and Pranika Joshi (collectively "plaintiffs") filed a complaint against Starbucks Corporation ("defendant"), asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory fraud. This matter is before the court on plaintiffs' motion for order of right to attach and writ of attachment.

1

Defendant opposes the motion. For the reasons set forth below,[1] plaintiffs' motion to attach is DENIED.

**BACKGROUND**

This dispute arose out of a lease agreement that defendant allegedly breached by failing to occupy the leased premises and pay monthly rent. Plaintiffs own certain real property located in Chico, California. (Pls. Compl. ("Compl.") [Docket #1], filed Jan. 12, 2009, ¶ 3; Rakesh Joshi's Declaration in Support of Motion for Order of Right to Attach and Writ of Attachment ("R. Joshi Decl.") [Docket #11], filed Jan. 11, 2009, ¶ 2.) In or about June 2007, plaintiffs and defendant began negotiations for defendant to lease a portion of a retail building complex to be constructed by plaintiffs on plaintiffs' property. (Compl. ¶ 7; R. Joshi Decl. ¶ 3.) Defendant negotiated to open one of its coffee shops to serve as the anchor store in the building complex and required that plaintiffs construct the store to its specifications, including constructing a drive-through lane. (Compl. ¶ 7; R. Joshi Decl. ¶ 3.) In February 2008, plaintiffs and defendant entered into a lease agreement, which provided that defendant would lease the anchor store from plaintiffs for a period of ten years. (Compl. ¶ 8; R. Joshi Decl. ¶ 4.) The lease provided that defendant would pay annual rent of $76,500 for the first five years of the lease term and $84,252 for the last five years of the lease term, for a total of $803,760, in

/////

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

2

addition to its proportional share of a Common Area Maintenance Charge. (Compl. ¶ 8; R. Joshi Decl. ¶ 5.)

Allegedly relying upon execution of the lease with defendant, plaintiffs acquired financing from Community First Bank in the amount of $1,500,000 to construct the building complex. (Compl. ¶ 10; R. Joshi Decl. ¶ 7.) On or about June 20, 2008, a representative of defendant contacted plaintiffs and informed them that although defendant executed a lease with plaintiffs, defendant would not be occupying its contracted retail location in plaintiffs' business complex. (Compl. ¶ 12; R. Joshi Decl. ¶ 9.) Plaintiffs nonetheless proceeded to complete construction of defendant's contracted retail location pursuant to defendant's specifications. (R. Joshi Decl. ¶ 10.) To date, defendant has not occupied the store for which it executed the lease agreement and has not paid rent. (Id. ¶ 11.)

Plaintiffs assert that they would not have acquired financing for the property or constructed the business complex if defendant had not agreed to rent a retail space in the business complex. (Compl. ¶ 14; R. Joshi Decl. ¶ 12.) Further, plaintiffs assert that they have lost rental income because they have not been able to lease their property to other tenants, who allegedly terminated lease negotiations upon discovering that defendant did not intend to occupy a store in plaintiffs' complex. (Compl. ¶ 14; R. Joshi Decl. ¶ 13.)

Plaintiffs request that the court issue a right to attach order and a writ of attachment in the amount of $1.5 million, which represents (1) defendant's total rental payments owed over the course of the ten year term, (2) a portion of the financing

cost to construct the business complex, (3) lost profits, (4) the cost of reletting the location, (5) maintenance expenses, and (6) costs and attorneys' fees.

**STANDARD**

Federal Rule of Civil Procedure 64(a) provides that "at the commencement and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Thus, Rule 64 permits "state seizure provisions to be used in federal courts." <u>Reebok Int'l v. Marnatech Enters.</u>, 970 F.2d 552, 558 (9th Cir. 1992). Federal Rule of Civil Procedure 64(b) provides that one of the seizure remedies available under Rule 64 is attachment.

In California, the procedures and grounds for obtaining orders permitting prejudgment writs of attachment are governed by California Code of Civil Procedure ("C.C.P.") §§ 481.010 *et seq*. C.C.P. § 483.010(a) provides that attachment is only proper "in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim is a fixed or readily ascertainable amount not less than five hundred dollars ($500) exclusive of costs, interest, and attorney's fees." Under California law, a court must make the following findings as a predicate for issuing a right to attach order: (1) The claim upon which the attachment is based is one upon which an attachment may be issued; (2) The plaintiff has established the probable validity of the claim upon which the attachment is based; (3) The attachment is not sought for a purpose other than the recovery on the claim upon which the

4

attachment is based; and (4) The amount to be secured by the attachment is greater than zero. C.C.P. § 484.090.

The application for a right to attach order must be supported by an affidavit or declaration showing that the applicant, on the facts presented, would be entitled to a judgment on the claim upon which the attachment is based. C.C.P. § 484.030. The affidavit or declaration must state the facts "with particularity." C.C.P. § 482.040.

Plaintiff has the burden of proof to show that a right to attach order should be issued. See Loeb & Loeb v. Beverley Glen Music, Inc., 166 Cal. App. 3d 1110, 1116 (1984); see also Legislative Committee Comment to 1974 Addition to C.C.P. § 484.090 (stating that the "plaintiff has the burden of proving (1) that his claim is one upon which an attachment may be issued; and (2) the probable validity of such claim.") Attachment is a harsh remedy in that an alleged debtor loses control of his property before the claim against him is adjudicated, and provisions relating thereto should be strictly construed. J.C. Peacock, Inc. v. Hasko, 196 Cal. App. 2d 363, 365 (1961); accord Kemp Bros. Const., Inc. v. Titan Elec. Corp., 146 Cal. App. 4th 1474, 1476 (2007).

**ANALYSIS**

**A. The Claim Upon Which the Attachment is Based is Not One Upon Which an Attachment May be Issued**

Defendant opposes plaintiffs' motion to attach on the ground that the claim upon which attachment is based is not one upon which attachment may be issued. Specifically, defendant asserts
/////

that the total amount of plaintiffs' claim is not "a fixed or readily ascertainable amount."

"[I]t is a well-recognized rule of law . . . that an attachment will lie upon a cause of action for damages for a breach of contract where the damages are readily ascertainable by reference to the contract and the basis for computation of damages appears to be reasonable and definite." <u>CIT Group/Equip. Fin., Inc. v. Super DVD, Inc.</u>, 115 Cal. App. 4th at 540. "[T]he contract sued on must furnish a standard by which the amount due may be clearly ascertained and there must exist a basis upon which the damages can be determined by proof." <u>Id.</u> However, "[t]he fact that the damages are unliquidated is not determinative." <u>Id.</u> "Accordingly, it is not necessary that the amount owed appear on the face of the contract; it often happens that the amount due under a contract does not appear on the contract itself." <u>Id.</u> The amount of the indebtedness may be shown by affidavit. <u>Stotland v. Mobile Homes Engineering Corp.</u>, 197 Cal. App. 2d 815, 818.

Both parties rely upon <u>CIT</u>, a case in which the court held that the plaintiff's damages were "fixed or readily ascertainable." In <u>CIT</u>, Super DVD entered into a master lease, as well as two lease schedules, with CIT for DVD duplication machines. 115 Cal. App. 4th at 539. The two lease schedules provided for monthly rental payments over fixed terms. <u>Id.</u> The master lease provided CIT with remedies in the event of Super DVD's default, which included declaring all rental sums immediately due and payable. <u>Id.</u> Shortly after executing the lease agreements, Super DVD defaulted on its payments under the

master lease and both lease schedules. Id. CIT subsequently sold the equipment for less than the remaining amounts owed under the lease schedules, and, in seeking to recover the deficiency, moved for a writ of attachment. Id. The court stated that the issue in the case was whether the amount of plaintiff's claim was a fixed or readily ascertainable amount. Id. at 539-40. The court found that there was a clear basis for attachment because each of the lease schedules set forth the rental period and the monthly rent due for each machine, and there was no profit or other calculation to be made. Id. at 541. In holding that attachment was proper, the court stated that the "master lease and corresponding lease schedules provide a clear and definite formula for the computation of damages, to wit: the monthly rent multiplied by the unexpired term." Id.

Unlike CIT, neither the lease agreement nor any other document which plaintiffs can point to provides "a clear and definite formula" for the measure of damages arising out of plaintiffs' construction loan. Plaintiffs fail to specify their damages with sufficient particularity to support a motion to attach. Assuming *arguendo* that plaintiffs are entitled to attach the full value of the rental payments due over the term of the ten-year lease, plaintiffs have not sufficiently alleged that their additional damages are of a fixed or readily ascertainable amount. With respect to damages arising out of plaintiffs' construction loan, it is unclear what portion, if any, of the loan should be included in the amount plaintiffs seek to have attached. Plaintiffs merely state that defendant is liable for "a portion of the loan costs." (Pl. Reply in Support of Motion

for Order of Right to Attach ("Pl. Reply"), 9.) In neither their complaint, their motion to attach, their reply in support of their motion to attach, nor their numerous affidavits are plaintiffs able to identify the specific amount of the loan for which defendant is allegedly liable.

Furthermore, it is highly uncertain whether defendant is liable for any portion of plaintiffs' construction loan. In arguing that they are entitled to consequential damages for obtaining financing for the business complex, plaintiffs rely upon Section 14.2(a) of the Commercial Lease ("the Lease"), which provides that "Landlord shall be entitled to recover from Tenant all damages incurred by Landlord by reason of Tenant's default, *including*, *but not limited to*, the cost of recovering possession of the Premises, expenses of reletting, . . . and the Base Rent and Annual Additional Rent as it becomes due hereunder." (Ex. A to R. Joshi Decl.) (emphasis added). However, Section 3 of the Lease provides, "Other than paying Base Rent and the other charges *expressly* provided elsewhere in this Lease, *Tenant has no obligation to pay Landlord any other amounts*." (Id.) (emphasis added.) In sum, while one section of the Lease provides that plaintiffs' recovery of damages is not necessarily limited to rent and expenses relating to recovery of possession and reletting, another section states that defendant is only liable for those expenses expressly provided for in the Lease. At this stage in the litigation, it is unclear whether plaintiffs' or defendant's interpretation of the Lease with respect to consequential damages controls. As such, the measure of
/////

plaintiffs' consequential damages is not of a "fixed or readily ascertainable" nature.

Plaintiffs request to attach amounts for lost profits, costs for reletting the location, and maintenance expenses is similarly vague. Plaintiffs concede that these alleged damages are not of a fixed or readily ascertainable amount; plaintiffs simply claim that these damages can be calculated through expert discovery. Further, nowhere in their affidavits do plaintiffs provide "clear and definite" formulas for the computation of such damages. Baldly asserting that defendant is liable for lost profits, costs for reletting the location, and maintenance expenses, without specifying a precise figure for each of these respective damages, does not meet the strict requirements of C.C.P. § 483.010(a).[2]

Accordingly, the court concludes that plaintiffs' claim is not one upon which attachment may be issued, as plaintiffs' damages claim is not of a fixed or readily ascertainable amount.

**B. The Attachment is Sought for a Purpose Other Than Recovery on the Claim Upon Which the Attachment is Based**

Defendant further opposes plaintiffs' motion to attach on the ground that attachment is sought for a purpose other than recovery on the claim upon which attachment is based. Specifically, defendant asserts that plaintiffs are seeking attachment in order to gain settlement leverage with defendant.

"The primary purpose of the remedy of attachment is to allow unsecured creditors a procedure ancillary to their action by which to ensure that the alleged debtor's assets are not

---

[2] This is particularly true where, as set forth above, it is unclear whether the Lease supports collection of such damages.

dissipated prior to the time the creditor can obtain and enforce the anticipated judgment on his claim." <u>North Hollywood Marble Co., Inc. v. Superior Court</u>, 157 Cal. App. 3d 683, 690 (1984).

Although plaintiffs claim that "[d]efendant is in a very precarious financial situation that jeopardizes [p]laintiffs' ability to collect for losses from the admitted contract breach," a cursory examination of defendant's most recent Form 8-K filed with the United States Securities and Exchange Commission indicates otherwise. While defendant acknowledges that it is planning on closing 300 stores (200 in the United States), which could result in as many as 6,000 employees being laid off, defendant has set aside $140 million to cover lease termination costs, the very costs associated with this action if plaintiffs prevail. Additionally, defendants earned $2.6 billion in revenue and $113.1 million in non-GAAP net income for the first quarter of the 2009 fiscal year. Defendant's consolidated balance sheet also reveals that defendant currently holds over $356 million in cash and cash equivalents. Assuming *arguendo* that plaintiffs prevail in this suit, it is highly unlikely that defendant's assets will be "dissipated prior to the time [plaintiffs] can obtain and enforce the anticipated judgment of [their] claim," as defendant has the financial wherewithal to pay for an adverse judgment. <u>Cf.</u> <u>Johnson v. Alexander</u>, 63 Cal. App. 3d 806, 814 (1976) (holding that attachment was proper where there was "a substantial danger that the defendants would transfer, other than in the ordinary course of business, remove or conceal the property sought to be attached").

/////

Accordingly, the court concludes that plaintiffs have not met the burden of demonstrating that they seek attachment for purposes other than recovery upon their claim, as defendant's financial situation is not nearly as "precarious" as plaintiffs represent.[3]

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion for order of right to attach and writ of attachment is DENIED.

IT IS SO ORDERED.

DATED: March 23, 2009

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

[3] All four requirements of C.C.P. § 484.090 must be satisfied for a court to issue a right to attach order. Since the court has found that two of the requirements of C.C.P. § 484.090 have not been met, the court need not address the remaining elements of Section 484.090.